# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| WILLIAM D. WARNER, On Behalf of Himself and All Others Similarly Situated, | ) ) )  Case No.   3:18-cv-2478 |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| ENERGY TRANSFER PARTNERS, L.P., KELCY L. WARREN, MICHAEL K. GRIMM, MARSHALL S. McCREA, MATTHEW S. RAMSEY, DAVID K. SKIDMORE, and W. BRETT SMITH, | ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) ) |

Plaintiff William D. Warner ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public unitholders of Energy Transfer Partners, L.P. ("ETP" or the "Partnership") against ETP and the members of the Board of Directors (the "Board" or the "Individual Defendants") of Energy Transfer Partners, L.L.C. ("ETP Managing GP"), the general partner of Energy Transfer Partners GP, L.P. ("ETP GP"), the general partner of ETP, for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which ETP will be acquired by Energy Transfer Equity, L.P. ("ETE")

through ETE's wholly-owned subsidiary Streamline Merger Sub, LLC ("Merger Sub") (the "Proposed Transaction").

2. On August 1, 2018, ETP and ETE issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, ETP unitholders will be entitled to receive 1.28 common units of ETE for each ETP common unit they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $27 billion.

3. On September 12, 2018, ETP filed a definitive proxy statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that ETP unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the valuation analyses performed by ETP's financial advisor, Barclays Capital Inc. ("Barclays"), in support of its fairness opinion; and (ii) potential conflicts of interest faced by Barclays. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as ETP unitholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. In short, unless remedied, ETP's public unitholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the unitholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  ETP is headquartered in this District.  Moreover, each of the Individual Defendants, as Partnership officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ETP common stock.

9. ETP is a Delaware limited partnership and maintains its principal executive offices at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225.  ETP is engaged in the midstream transportation and storage of natural gas, natural gas liquids ("NGLs"), refined products and crude oil, and terminalling services and acquisition and marketing activities, as well as NGL storage and fractionation services.  ETP is managed by its general partner, Energy Transfer Partners GP, L.P. ("ETP GP"), and ETP GP is managed by its general partner, Energy Transfer Partners, L.L.C. ("ETP Managing GP").  ETP Managing GP is a wholly owned subsidiary of ETE. ETP's common stock is traded on the New York Stock Exchange under the ticker symbol "ETP."

10. Defendant Kelcy L. Warren ("Warren") is Chief Executive Officer ("CEO") and

Chairman of the Board of ETP and also serves as Chairman of ETE's board of directors.

11. Defendant Michael K. Grimm ("Grimm") is, and has been at all relevant times, a director of the Partnership. Defendant Grimm is also a member of the Conflicts Committee of the ETP Board (the "Conflicts Committee").

12. Defendant Marshall S. McCrea ("McCrea") is, and has been at all relevant times, a director of the Partnership. He is Group Chief Operating Officer and Chief Commercial Officer for the Energy Transfer family and has served in that capacity since November 2015. Defendant McCrea previously served as President and Chief Operating Officer of ETP's general partner from June 2008 to November 2015, as President – Midstream from March 2007 to June 2008, and as the Senior Vice President – Commercial Development from January 2004 to March 2007. Defendant McCrea also currently serves on the board of directors of the general partner of ETE, of Sunoco Logistics Partners L.P. ("Sunoco Logistics") and of Sunoco LP.

13. Defendant Matthew S. Ramsey ("Ramsey") is, and has been at all relevant times, a director of the Partnership. Defendant Ramsey has served as President and Chief Operating Officer of ETP's general partner since November 2015. Defendant Ramsey also currently serves on the board of directors of the general partner of ETE and of Sunoco LP, serving as chairman of Sunoco LP's board since April 2015.

14. Defendant David K. Skidmore ("Skidmore") is, and has been at all relevant times, a director of the Partnership. Defendant Skidmore is also a member of the Conflicts Committee.

15. Defendant W. Brett Smith ("Smith") is, and has been at all relevant times, a director of the Partnership. Defendant Smith is also a member of the Conflicts Committee.

16. The defendants Warren, Grimm, McCrea, Ramsey, Skidmore, and Smith are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17. ETP GP is the general partner of ETP.

18. ETP Managing GP is the general partner of ETP GP and a wholly owned subsidiary of ETE.

19. ETE is a Delaware limited partnership and maintains its principal executive offices at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. ETE's common stock is traded on the New York Stock Exchange under the ticker symbol "ETE."

20. Merger Sub is a Delaware limited liability company and a wholly owned subsidiary of ETE.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own ETP common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of July 31, 2018, there were approximately 1,166,393,851 ETP common units outstanding. All members of the Class may be identified from records maintained by ETP or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Partnership**

27. ETP is a limited partnership managed by ETP GP, which in turn is managed by its general partner, ETP Managing GP. ETP Managing GP is owned by ETE. In April 2017, ETP and Sunoco Logistics completed a merger in which Sunoco Logistics acquired ETP in a unit-for-unit transaction, with ETP unitholders receiving 1.5 Sunoco Logistics common units for each ETP

common unit held. In connection with the merger, Sunoco Logistics was renamed Energy Transfer Partners, L.P. and Sunoco Logistics' general partner was merged with and into ETP GP, with ETP GP surviving as an indirect wholly-owned subsidiary of ETE.

28. Together, the Partnership and its operating subsidiaries operate a diversified portfolio of energy assets. Through recent acquisitions, ETP has become one of the largest midstream service providers in the United States, providing logistics and transportation platforms for natural gas, natural gas liquids, crude oil and refined products.

29. On June 1, 2017, ETP announced that one of the Partnership's major projects, the Dakota Access Pipeline ("Dakota Access") and the Energy Transfer Crude Oil Pipeline ("ETCO," and together with Dakota Access, the "Bakken Pipeline"), went into commercial service. The Bakken Pipeline is a 1,915 mile pipeline system with commitments for approximately 520,000 barrels per day. It transports domestically produced crude oil from the Bakken/Three Forks production areas in North Dakota, to a storage and terminalling hub in Illinois, and/or to additional terminals in Texas.

30. The Partnership's Rover Pipeline is a 713-mile natural gas pipeline designed to transport 3.25 billion cubic feet per day of domestically produced natural gas from the Marcellus and Utica Shale production areas to markets across the U.S. and into the Union Gas Dawn Storage Hub in Ontario, Canada and redistribution back into the U.S. or Canadian market. In August and December 2017, respectively, ETP announced that Phase 1A and Phase 1B of the Rover Pipeline were placed in service.

**The Proposed Transaction**

31. Throughout 2017 and 2018, ETE and ETP have considered potential simplification transactions in an effort to reduce ETP's cost of capital and increase unitholder value

for each of ETE and ETP.

32.     In connection with these discussions, on July 24, 2018, ETE sent a proposal to ETP to acquire ETP for 1.194 ETE common units per ETP common unit, other than those held by ETE and its subsidiaries.

33.     Also on July 24, 2018, the Board created a conflicts committee, consisting of defendants Grimm, Skidmore and Smith (the "ETP Conflicts Committee").

34.     Following negotiations, the ETP Conflicts Committee and ETE's conflicts committee agreed to an exchange ratio of 1.28 ETE common units for each ETP common unit.

35.     At an August 1, 2018 Conflicts Committee meeting, Barclays rendered its fairness opinion and the Conflicts Committee approved the Merger Agreement. Later that day, the Board approved the Merger Agreement. The parties then finalized and executed the Merger Agreement.

36.     That day, ETE and ETP issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> DALLAS --Aug. 1, 2018-- **Energy Transfer Equity, L.P. (NYSE: ETE)** and **Energy Transfer Partners, L.P. (NYSE: ETP)** today announced that they have entered into a definitive agreement providing for the merger of ETP with a wholly-owned subsidiary of ETE in a unit-for-unit exchange. In connection with the transaction, ETE's incentive distribution rights (IDRs) in ETP will be cancelled. The transaction, which was approved by the boards of directors and conflicts committees of both partnerships, is expected to close in the fourth quarter of 2018, subject to the approval by a majority of the unaffiliated unitholders of ETP and other customary closing conditions. ETE currently owns the general partner of ETP.
>
> Under the terms of the transaction, ETP unitholders (other than ETE and its subsidiaries) will receive 1.28 common units of ETE for each common unit of ETP they own.
>
> The transaction is expected to provide significant benefits for the partnerships, including:
>
> - providing a premium to the current ETP common unit trading price while being immediately accretive to ETE's distributable cash flow per unit;

- improving the combined partnership's equity cost of capital through the elimination of ETE's IDRs in ETP, which in turn is expected to enhance the combined partnership's cash accretion from investments in organic growth projects and strategic M&A following the closing of the transaction;

- further aligning the economic interests within the Energy Transfer family;

- simplifying the overall structure, which reduces complexity and improves transparency for investors; and

- increasing cash distribution coverage and retained cash flow, which will allow the combined partnership to reduce its leverage ratio as well as reduce the need for equity issuances to fund organic growth.

The transaction is expected to strengthen the balance sheet of the combined organization by utilizing cash distribution savings to reduce debt and to fund a portion of ETP's robust growth capital expenditure program. The completion of major capital projects currently in progress is expected to continue to generate strong distributable cash flow growth for the combined partnership following the transaction. The partnerships expect to maintain investment grade credit ratings for the combined partnership.

In connection with the simplification transaction, ETE's general partner has agreed to waive its existing contractual preemptive right with respect to the issuance of ETE common units in the merger that, if otherwise exercised, would entitle ETE's general partner to purchase additional ETE common units to maintain its and its affiliates' percentage ownership interest in ETE. In partial consideration for that waiver, ETE's general partner will be issued a newly created series of Class A units that will result in ETE's general partner and its affiliates maintaining the same relative voting interest in ETE that the general partner and its affiliates had prior to the merger.

**The Proxy Statement Contains Material Misstatements or Omissions**

37. The Defendants caused the materially incomplete and misleading Proxy Statement to be filed with the SEC. The Proxy Statement misrepresents or omits material information that is necessary for the Partnership's unitholders to make an informed decision whether to vote in favor of the Proposed Transaction.

38. Specifically, as set forth below, the Proxy Statement fails to provide Partnership unitholders with material information or provides them with materially misleading information

concerning: (i) the valuation analyses performed by ETP's financial advisor, Barclays, in support of its fairness opinion; and (ii) potential conflicts of interest faced by Barclays.

39. Accordingly, ETP unitholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Barclays' Financial Analyses*

40. The Proxy Statement describes Barclays' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, ETP's public unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to ETP's unitholders.

41. With respect to Barclays' *Discounted Distributable Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values calculated for ETP and ETE common units as of December 31, 2021; (ii) quantification of the actual inputs and assumptions underlying the discount rate range of 11.5% to 13.5% and 12.0% to 14.0% for ETP and ETE, respectively; and (iii) the implied perpetuity growth rates for ETP and ETE corresponding to the assumed terminal yields.

42. With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose: (i) ETP management's estimate of 2019 earnings before interest, taxes, depreciation and amortization ("EBITDA") utilized in the analysis (ii) the individual multiples and financial metrics for each of the selected comparable companies observed by Barclays in the

analysis; and (ii) any benchmarking analyses for ETP and ETE in relation to the selected companies analyzed by Barclays.

43. With respect to Barclay's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Barclays in the analysis.

44. When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. The omission of this information renders the statements in the "Opinion of the Financial Advisor to the ETP Conflicts Committee" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Barclays' Potential Conflicts of Interest*

46. Further, the Proxy Statement fails to disclose material information concerning the fees received by Barclays for its past work performed for ETP and ETE respectively.

47. The Proxy Statement sets forth that:

> [A]s part of Barclays' ongoing investment banking coverage efforts for ETE, prior to Barclays' engagement by the ETP Conflicts Committee, Barclays employees, including certain members of the Barclays team which represented the ETP Conflicts Committee in the transaction, had regularly met with ETE to discuss strategic and financing alternatives potentially available to ETE, including discussions regarding a potential business combination with ETP, and provided ETE with pitch materials and analyses with respect to such a possible combination.

Proxy Statement at 77. The Proxy Statement fails, however, to disclose the details of the analyses Barclays provided ETE concerning a potential combination of ETE and ETP and whether Barclays proposed any price terms for an acquisition of ETP by ETE, including the details thereof.

48. The Proxy Statement further sets forth that

11

>Barclays also disclosed to the ETP Conflicts Committee and RLF information regarding its prior engagements since January 1, 2014 for ETP, ETE, and their affiliates and the amount and nature of the fees it received from such parties in a presentation dated July 25, 2018, and subsequently updated on August 1, 2018.

*Id.* at 77. The Proxy Statement fails, however, to disclose the amount of the fees Barclays received in connection with its prior engagements since January 1, 2015 for ETP, ETE and their affiliates.

49. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

50. The omission of this information renders the statements in the "Opinion of the Financial Advisor to the ETP Conflicts Committee" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

12

statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54. By virtue of their positions within the Partnership, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial analyses performed by the Partnership's financial advisor, and potential conflicts of interest faced by the Partnership's financial advisor. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of ETP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of ETP and participation in and/or awareness of the Partnership's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

62. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Partnership directors had input into.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange

Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, ETP's unitholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of ETP, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to ETP unitholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 17, 2018

                                                Respectfully submitted,

                                                /s/ William B. Federman
                                                William B. Federman, TBA #00794935
                                                FEDERMAN & SHERWOOD
                                                2926 Maple Ave., Suite 200
                                                Dallas, TX 75201
                                                Telephone:   (214) 696-1100
                                                Facsimile:   (214) 740-0112
                                                Email:  wbf@federmanlaw.com

                                                *Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1. I have reviewed the complaint in this matter against Energy Transfer Partners, L.P. ("ETP") and others and authorized the filing thereof.

2. I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action.

3. I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. My transactions in ETP securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

5. I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):

6. I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Dated: September 17, 2018

William D. Warner

| Transaction (Purchase or Sale) | Trade Date | Quantity | Price per Unit |
|---|---|---|---|
| Purchase | 05/23/18 | 76 | $19.24 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |